**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DUSTIN J. TRIMM,**

                                        **Petitioner,**

        **vs.**                                                    **9:18-cv-287**
                                                              **(MAD/TWD)**

**MICHAEL KIRKPATRICK,** *Superintendent,*
*Elmira Correctional Facility,*

                                        **Respondent.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**O'CONNELL & ARONOWITZ, P.C.**          **STEPHEN R. COFFEY, ESQ.**
54 State Street
9th Floor
Albany, New York 12207-2501
Attorneys for Petitioner

**OFFICE OF THE NEW YORK**               **JAMES FOSTER GIBBONS, AAG**
**ATTORNEY GENERAL**
28 Liberty Street
New York, New York 10005
Attorneys for Respondent

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 26, 2013, Petitioner Dustin J. Trimm appeared in St. Lawrence County Court and

pled guilty to one count of Manslaughter in the First Degree and two counts of Criminal Sexual

Act in the First Degree. Having exhausted his state court remedies, on March 7, 2018, Petitioner

filed a counseled petition for a writ of habeas corpus claiming (1) his guilty pleas were

involuntary and (2) the trial court erred in denying his motion to withdraw his guilty pleas without

an evidentiary hearing. *See* Dkt. No. 1.

As set forth below, Petitioner's application is denied.

## II. BACKGROUND

**A.     The Indictments**

On February 2, 2012, a St. Lawrence County grand jury indicted Petitioner for Murder in the Second Degree, in violation of New York Penal Law § 125.25(1), for intentionally killing Jason Wing in late August or early September 2010.  *See* Dkt. No. 11-2 at 3.[1]  On August 2, 2012, a St. Lawrence grand jury indicted Petitioner for two counts of Disseminating Indecent Material to a Minor in the First Degree, in violation of New York Penal Law § 235.22; two counts of Patronizing a Prostitute in the Third Degree, in violation of New York Penal Law §§ 230.04, 230.02(1)(c); one count of Unlawful Dealing with a Child in the First Degree, in violation of New York Penal Law § 260.20(2); and one count of Endangering the Welfare of a Child, in violation of New York Penal Law § 260.10(1), all involving a 16-year-old victim.  *See id.* at 4-8.  On March 28, 2013, a St. Lawrence County grand jury indicted Petitioner for two counts of Criminal Sexual Act in the First Degree against victims aged 9 and 13, in violation of New York Penal Law § 130.50(1); two counts of Sexual Abuse in the First Degree against a 13-year-old victim, in violation of New York Penal Law § 130.65(1); one count of Endangering the Welfare of a Child against a 13-year-old victim, in violation of New York Penal Law § 260.10(1); and one count of Predatory Sexual Assault, in violation of New York Penal Law § 130.95(1).  *See id.* at 9-12.

**B.     Petitioner's Guilty Pleas**

Petitioner privately retained counsel Ryan G. Blanch, Esq., and James W. Parkman, Esq., to represent him on the murder indictment and, separately, he retained Richard V. Manning, Esq.,

---

[1] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

to represent him on the sex-offense indictments.[2]   On April 26, 2013, Petitioner appeared before the Honorable Jerome J. Richards of St. Lawrence County Court and agreed to enter a negotiated guilty plea.  *See* Dkt. No. 11-2 at 38-47.  Pursuant to the plea agreement, Petitioner pled guilty to one count of Manslaughter in the First Degree and two counts of Criminal Sexual Act in the First Degree in satisfaction of all three indictments.  In addition, Petitioner promised to tell police about the victims of any other crimes he committed in St. Lawrence County, to offer a written explanation of the details of the homicide to the victim's mother, to waive his right to appeal, and to pay restitution in an amount to be determined at sentencing.  *See id.*  In exchange, Petitioner would be subject to a maximum of twenty-five years imprisonment to be followed by five years of post-release supervision for the manslaughter conviction, to be followed by determinate terms of seven years of imprisonment and twenty years of post-release supervision for the criminal sexual acts convictions, for an aggregate term of thirty-two years of imprisonment and twenty years of post-release supervision.  *See id.*  Moreover, Petitioner would receive immunity regarding any similar crimes he confessed to relating to the unidentified victims he named pursuant to the agreement.  *See id.*

After being placed under oath, Petitioner confirmed that he understood the terms of the plea offer, that the plea offer as recited constituted the entirety of all promises that had been made to him, and that he had no questions about the negotiated agreement.  *See* Dkt. No. 11-2 at 43-52.  Petitioner stated that he understood that he was surrendering his rights to remain silent, to pre-trial hearings (including those that had already been scheduled), to a presumption of innocence, to trial

---

[2] Although Petitioner initially retained separate counsel to represent him on the 2013 sex-abuse indictment, on April 26, 2013, he consented to the withdrawal of separate counsel and the substitution of Mr. Manning as his attorney for that indictment as well.  *See* Dkt. No. 11-2 at 39-40.

by jury, and to object to the evidence and cross-examine witnesses. Petitioner further confirmed that, if he elected to proceed to trial and was convicted of all charges, he faced a maximum of seventy-five years of imprisonment, and that he was voluntarily pleading guilty, and that he was satisfied with his opportunity to discuss the plea offer with counsel. Additionally, Petitioner confirmed that he had not consumed any intoxicating substances or taken any medications within the past twenty-four hours, that he was satisfied with his attorneys, and that he intended to waive his right to appeal. Moreover, Petitioner agreed that he would be subject to potential civil commitment proceedings at the end of his sentence. *See id.*

Petitioner also admitted that in late August 2010, he intentionally used a rifle to shoot Jason Wing twice in the chest and once in the head, killing him. *See id.* at 51-52. Further, Petitioner acknowledged that in January 2010, he forced his penis into the anus of another person, and that in the spring of 2011, he forced his mouth onto the penis of another person. *See id.* at 52-53. Based on Petitioner's admissions, the Court accepted his guilty pleas to the reduced charges. *See id.* at 53-54.

## C.    Motion to Withdraw his Guilty Pleas and Sentencing

On or about July 23, 2013, Petitioner moved pursuant to CPL § 220.60 through counsel, Edward F. Narrow, Esq., for permission to withdraw his guilty pleas. *See* Dkt. No. 11-2 at 55-63. In his motion, Petitioner argues that, although he understood that his aggregate sentence would be thirty-two years of imprisonment, his plea counsel inaccurately advised him regarding the amount of "merit time allowance" he could theoretically receive against his sentence with good behavior and full participation in prison rehabilitative programming. *See id.* at 58-60. Petitioner also alleged that he was actually innocent, that he was intoxicated at the time of the plea, that he misunderstood the length of the post-release supervision, that he believe the letter he wrote to the

4

victim's mother would be destroyed, and that counsel failed to fully explain the restitution or civil commitment aspects of his plea offer. *See id.*  On July 31, 2013, Petitioner's plea counsel submitted a joint sworn affidavit noting, among other things, that they had not promised Petitioner any specific amount of sentence reduction but merely described hypothetical possibilities, that they had explained their advice on this point was tentative and uncertain, and that the discussion occurred only after Petitioner decided to plead guilty. *See id.* at 89-95.

On August 5, 2013, the trial court denied Petitioner's motion to withdraw his guilty pleas. *See* Dkt. No. 11-2 at 118.  Upon denying Petitioner's motion, the trial court proceeded immediately to sentencing.  In compliance with the terms of his plea agreement, Petitioner provided the court and district attorney's office with a list of his sex victims, which spanned two pages, and Petitioner received immunity for his offenses committed against these individuals. *See id.* at 108.  At the sentencing, Mr. Wing's mother spoke noting, among other things, that because Petitioner hid Mr. Wing's body after he killed him, "he was in no condition for anyone to see" when discovered two years later and had to be cremated before re-burial. *See id.* at 120-21.  The prosecution also noted that Petitioner had frequently provided drugs and alcohol to the young victims of his uncharged sex crimes. *See id.* at 126-28.  Petitioner spoke prior to sentencing, stating that he was "innocent on all charges" and that he pled guilty because his attorneys told him he would "only serve 18 years, do the programs and become a mentor." *Id.* at 131.  The court rejected Petitioner's statements as incredible and imposed the negotiated sentence. *See id.* at 134-36.  The court also ordered Petitioner to pay $8,196.17 in restitution to the victims in the indictments. *See id.* at 136-38.

**D.     The First Federal Petition**

On July 7, 2014, Petitioner filed a *pro se* petition for a writ of habeas corpus in federal court, arguing, among other things, that this guilty plea was involuntary. On July 23, 2014, the Honorable Thomas J. McAvoy dismissed the petition without prejudice on the basis that he had failed to exhaust his state-court remedies. *See Trimm v. Sheahan*, No. 9:14-cv-905, 2014 WL 3670723 (N.D.N.Y. July 23, 2014).

**E.      Petitioner's Direct Appeal**

Petitioner appealed his conviction to the Appellate Division, Third Department, with the assistance of counsel, raising substantially the same issues as in his motion to withdraw his guilty pleas and arguing that the lower court abused its discretion in denying that motion. *See* Dkt. No. 11-2 at 13-33. On June 11, 2015, the Third Department affirmed Petitioner's conviction. *See People v. Trimm*, 129 A.D.3d 1215 (3d Dep't 2015). The Third Department held that the "thorough and detailed plea colloquy" was "in direct conflict" with Petitioner's allegations of intoxication, and that his "unsubstantiated protestations of innocence" did not warrant relief. *See id.* at 1216. With respect to his claim that his plea was not voluntary because he was denied the effective assistance of counsel, the court held that Petitioner's claims "concern matters outside of the record and are properly the subject of a CPL article 440 motion." *Id.* (citation omitted). Further, the Third Department found that Petitioner's "claim of ineffectiveness is also contradicted by the plea allocution, during which he assured County Court that he had ample time to discuss the matter with the various attorneys that represented him, that he was satisfied with the services of his counsel and that, other than what had been put on the record as part of the agreement, no other promises had been made to him as to what sentence he would receive." *Id.* Finally, the court noted that Petitioner's counsel "was able to secure a very favorable plea agreement in light of the number and severity of the crimes charged[.]" *Id.*

6

Thereafter, Petitioner sought leave to appeal to the New York Court of Appeals.  On October 26, 2015, the Court of Appeals denied leave.  *See People v. Trimm*, 26 N.Y.3d 1012 (2015).

## F.     Motion to Vacate Judgment

On August 8, 2016, Petitioner filed a counseled motion to vacate judgment pursuant to CPL § 440.10, arguing that his guilty pleas were involuntary on substantially the same basis as he alleged in his pre-sentencing motion.  *See* Dkt. No. 11-2 at 154-63.  On December 9, 2016, the trial court denied the motion without a hearing, holding that Petitioner's "self-serving and conclusory affidavit is directly contradicted by the record evidence, including his unequivocal affirmations to the Court during his plea allocution that he understood the terms of the agreement placed on the record, he had no questions about the agreement, he was voluntarily and of his own free choice pleading to the charges, and that he was satisfied with the representation he received from all of his attorneys." *Id.* at 339.  The trial court also noted that plea counsel "negotiated an extremely advantageous plea bargain and 'nothing in the record at the time of the plea calls into question the voluntariness of the plea or indicates that it was rendered so due to counsel's representation.'" *Id.* at 340 (quotation omitted).

On January 9, 2017, Petitioner sought leave to appeal the denial of his post-judgment motion to the Third Department.  *See* Dkt. No. 11-2 at 342.  On March 13, 2017, the Third Department denied leave to appeal.  *See id.* at 446.

## G.     The Second Federal Petition and Procedural History

Petitioner commenced this action through counsel on March 7, 2018, seeking a writ of habeas corpus.  *See* Dkt. No. 1.  In his application, Petitioner raises the following grounds for relief: (1) his plea counsel was ineffective in that they (a) "affirmatively misrepresented to [him]

the amount of time he would be required to serve in prison as a result of" the plea offer he accepted and (b) "recruited a non-attorney employee" to incorrectly advise Petitioner he would serve only eighteen years imprisonment if he pleaded guilty; (2) his plea was not knowing, intelligent, or voluntary because (a) his plea was predicated upon counsel's misstatements about his sentencing exposure, (b) he was told that a letter that he wrote to the victim's mother as part of the plea agreement would be destroyed, when in fact the letter was made a part of the record, and (c) at the time of his plea discussions and plea, he was under the influence of cocaine and suboxone; and (3) his due process rights were violated because he was not afforded a full hearing upon his motion to withdraw his guilty plea. *See* Dkt. No. 1 at 6-11; Dkt. No. 1-1 at 6-18.

In a Decision and Order dated March 14, 2018, the Court reviewed the petition and directed Petitioner to file a written affirmation explaining why the statute of limitations should not bar his petition. *See* Dkt. No. 3 at 4-6. On April 13, 2018, Petitioner complied with the Court's directive and explained that his petition is timely because he is entitled to equitable tolling. *See* Dkt. No. 4. In a Decision and Order dated April 18, 2018, the Court declined to *sua sponte* dismiss the petition as untimely and directed Respondent to file a response to the petition. *See* Dkt. No. 5.

### III. DISCUSSION

**A.      Timeliness of the Petition**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition must be filed within one year of the latest of four dates specified by statute, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of

the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[3]  A judgment of conviction is "final" within the meaning of 28 U.S.C. § 2244(d)(1)(A) upon completion of a defendant's direct appeal in the respective state's highest court and either the completion of proceedings before the United States Supreme Court, if the petitioner chooses to petition for a writ of certiorari, or the expiration of time to seek certiorari before the United States Supreme Court.  *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001); *see also McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (noting that a petitioner's judgment of conviction becomes final ninety days from the date the New York Court of Appeals denies leave to appeal).

Here, the Court of Appeals denied Petitioner's application for leave to appeal on October 26, 2015.  Petitioner then had ninety (90) days to seek certiorari to the United States Supreme Court.  Since Petitioner did not petition for a writ of certiorari, his conviction became final on Tuesday, January 26, 2016.[4]  *See Williams*, 237 F.3d at 151.  Petitioner thereafter had one year, or until Thursday, January 26, 2017, to file his petition for a writ of habeas corpus.  *See* 28 U.S.C. § 2244(d)(1)(A).

In calculating the one-year statute of limitations period, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted[.]"  28 U.S.C. § 2244(d)(2); *see also*

---

[3] The limitations period may alternatively begin to run on the following dates: (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

[4] Because the ninetieth day fell on a Sunday, Petitioner was entitled to file his certiorari petition as late as the ninety-first day following the denial of leave to appeal.  *See* Fed. R. App. P. 26(a)(1)(C).

*Acosta v. Artuz*, 221 F.3d 117, 119 (2d Cir. 2000).  Petitioner's time was, therefore, tolled on

August 3, 2016, when he filed his motion to vacate the judgment pursuant to CPL § 440.10.  *See*

Dkt. No. 11-2 at 163.  At that time, 190 days of his AEDPA time had already elapsed.

The AEDPA clock remained tolled until March 13, 2017, when the Appellate Division,

Third Department denied leave to appeal the denial of Petitioner's CPL § 440 motion.  *See Carey*

*v. Saffold*, 536 U.S. 214, 217-19 (2002) (holding that an application for state post-conviction relief

is "pending" pursuant to 28 U.S.C. § 2244(d)(2) not only during the time in which state courts are

considering collateral motions, but also during "the time between a lower state court's decision

and the filing of a notice of appeal to a higher state court"); *see also Hizbullahankhamon v.*

*Walker*, 255 F.3d 65 (2d Cir. 2001).

Petitioner's time for filing his federal habeas petition ran uninterrupted for another 175

days until it expired on Wednesday, September 6, 2017.  Petitioner did not file the instant petition

until March 7, 2018, **six months after** the time for doing so had expired.  *See Smith v. McGinnis*,

208 F.3d 13, 17 (2d Cir. 2000) (holding that the tolling provision "excludes time during which

properly filed state relief applications are pending but does not reset the date from which the one-

year statute of limitations begins to run"); *see also Rodriguez v. Smith*, No. 14-cv-1274, 2015 WL

5968837, *6 (N.D.N.Y. Oct. 13, 2015).

As Respondent notes, in response to the Court's *sua sponte* order to show why the statute

of limitations should not bar his petition, Petitioner argues that his conviction did not actually

become final at the conclusion of his direct appeal.  *See* Dkt. No. 4 at ¶¶ 10, 13-16, 19-20.  Rather,

Petitioner argues the fact that the Appellate Division "specifically ordered that further review of

the two main points of Petitioner's appeal ... were to be filed via a CPL § 440.10 motion" meant

that the post-judgment motion was itself part of the direct appeal.  *See id.*

10

Contrary to Petitioner's assertions, this is not an accurate statement of either the Appellate Division's holding, or of the nature of the subsequent proceedings.  In its decision, the Appellate Division noted that, because some of Petitioner's claims "concern matters outside of the record," they were "properly the subject of a CPL article 440 motion."  *Trimm*, 129 A.D.3d at 1216. Petitioner was not required to file such a motion, however, and the Appellate Division went on to address those claims on the merits.  *See id.*  Moreover, the law is clear that a state judgment becomes final upon completion of the petitioner's direct appeals and that any subsequent post-judgment motion collaterally attacking that judgment merely tolls the continued running of the one-year statute of limitations.  *See Cosey v. Lilley*, 460 F. Supp. 3d 346, 370 n.12 (S.D.N.Y. 2020) (citations omitted); *Gregory v. Racette*, No. 9:13-cv-181, 2014 WL 2215766, *4 (N.D.N.Y. May 29, 2014) (rejecting the petitioner's argument that his conviction became final on the date that he was denied leave to appeal the denial of his CPL § 440.10 motion because "the plain language of § 2244(d) provides that a judgment becomes final by 'conclusion of direct review' and that subsequent post-conviction filings such as his CPL § 440.10 motion merely toll the period of limitation that has already begun to run"); *Whitted v. Martuscello*, No. 11-cv-1222, 2014 WL 1345920, *3-4 (S.D.N.Y. Apr. 3, 2014) (dismissing as untimely habeas petition based on the grounds raised in the petitioner's second CPL § 440.10 motion because the petition was not filed within one year after direct appeal of his conviction had concluded).  Even though Petitioner was still entitled to collaterally attack his conviction in state court, his conviction nevertheless became final on January 26, 2016, when the time for seeking certiorari expired.

Accordingly, the Court finds that, unless Petitioner is entitled to equitable tolling, his petition for a writ of habeas corpus is untimely.

**B.     Equitable Tolling**

11

In response to the Court's *sua sponte* order directing Petitioner to show why his petition should not be dismissed as untimely, Petitioner contends that "he is entitled to equitable tolling as he has diligently pursued his rights and extraordinary circumstances prevented him from timely filing the Petition." Dkt. No. 4 at ¶ 21 (citing *Holland v. Florida*, 560 U.S. 631 (2010)). Petitioner argues that extraordinary circumstances prevented him "from filing the instant Petition more quickly." *Id.* at ¶ 23. Specifically, Petitioner claims that he has been housed at several different maximum security facilities while he was seeking relief in state court and that "he has not received multiple letters from counsel, significantly lengthening the time required to decide what steps to take in litigating these matters." *Id.* Respondent argues that Petitioner is not entitled to equitable tolling because the correspondence that Petitioner claims he never received "all appear to have been sent during the pendency of his direct appeal, before the time for filing a federal habeas petition had even commenced and over two years before the time for filing such a petition expired." Dkt. No. 11-1 at 11-12. Moreover, Respondent notes that, unlike the vast majority of federal habeas applicants, Petitioner has been represented by counsel at each stage of his challenges to his state conviction. *See id.* at 12.

The statutory limitations period under the AEDPA may be tolled for equitable reasons. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner seeking equitable tolling bears the burden of establishing two elements: (1) "that he has been pursuing his rights diligently," and (2) "that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). The determination is made on a case-by-case basis. *See Holland*, 560 U.S. at 649-50. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a

limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir.2011) (citations omitted).  The threshold for a petitioner to establish equitable tolling is very high.  *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

In the present matter, the Court finds that Petitioner has failed to establish that equitable tolling should apply to his petition.  As mentioned above, Petitioner claims that he failed to receive multiple letters from retained counsel due to errors in the prison mailing system.  Specifically, Petitioner claims that he wrote a letter to counsel on May 21, 2015 "requesting an update on the status of his appeal and inquiring about the filing of a CPL 440.10 Motion."  Dkt. No. 4 at ¶ 24.  Petitioner's counsel responded by letter on June 9, 2015, notifying Petitioner that "his appeal was heard on April 28, 2015."  *Id.*  Petitioner's counsel also sent him a letter dated June 16, 2015, forwarding him the Third Department's June 11, 2015 decision.  *See id.*  In a letter dated July 7, 2015, Petitioner makes clear that he did not receive either of the letters.  *See id.*

Additionally, Petitioner claims that he continued to have problems with prison staff interfering with his mail as late as February 2018.  *See id.* at ¶ 27.  Specifically, Petitioner claims that his counsel claims that they mailed him the final petition for writ of habeas corpus in February of 2018.  *See id.*  "On February 28, 2018, Elizabeth Connolly, Esq. of our firm had extensive conversations with prison officials who confirmed that the final Petition for the Writ of Habeas Corpus sent to the Petitioner for his approval was intercepted and not delivered to Petitioner.  Petitioner only received a copy of the Petition when Ms. Connolly was forced to drive six hours round trip to the Elmira Correctional facility to hand-deliver the Petition in person on March 5, 2018."  *Id.* at ¶ 28.

As Respondent correctly notes, the majority of the missing correspondence were sent during the pendency of Petitioner's direct appeal, before the one-year statute of limitations had

even commenced and while Petitioner was awaiting a decision on his appeal.  Notably absent from Petitioner's response to the Court's timeliness inquiry, however, is any adequate explanation as to why he was unable to file his **counseled** petition between March 13, 2017, when the Appellate Division denied leave to appeal the denial of his CPL § 440 motion, and September 6, 2017, when the remaining time on the statute of limitations expired.  Petitioner attempts to rely on the fact that he did not receive the copy of the finalized petition that his counsel mailed to him in February of 2018 until it was delivered to him in person on March 5, 2018.  *See* Dkt. No. 4 at ¶¶ 27-29.  At that point, however, the statute of limitations had already expired five months earlier. Counsel's trouble corresponding with Petitioner five months after the statute of limitations had already expired clearly does not present the type of extraordinary circumstances that would warrant the application of equitable tolling.[5]

Moreover, Petitioner has failed to demonstrate that between March 13, 2017, when the Appellate Division denied him leave to appeal, through March 7, 2018, when he filed his petition, that he diligently pursued his rights.  Rather, the petition and reply fail to explain why the petition could not have been filed within the one-year limitations period.  Even if Petitioner brought this action *pro se*, his failure to account for this time would undoubtedly render his petition untimely.

---

[5] If the petition was only several weeks late, the fact that Petitioner never received the final petition sent by his counsel in February of 2018 would likely be sufficient to warrant equitable tolling.  Here, however, the statute of limitations expired on September 6, 2017 and any difficulty counsel had in corresponding with Petitioner in February of 2018 does not meet the high bar for the application of equitable tolling.  *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (holding that, to warrant the application of equitable tolling, the petition must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of the filing"); *Siler v. Lamanna*, No. 17-cv-5996, 2018 WL 3687990, *3 (S.D.N.Y. Apr. 20, 2018) (holding that the petitioner was not entitled to equitable tolling where he failed to demonstrate that the alleged extraordinary circumstances *caused* the late filing).

*See Valverde*, 224 F.3d at 134; *Hizbullahankhamon*, 255 F.3d at 76 (citations omitted); *Muller v. Greiner*, No. 03 Civ. 1844, 2004 WL 97687, *3-4 (S.D.N.Y. Jan. 20, 2004); *Brown v. United States*, No. 10-cv-2641, 2011 WL 244815, *3 (E.D.N.Y. Jan. 20, 2011).

Based on the foregoing, the Court finds that Petitioner is not entitled to equitable tolling and his petition must be dismissed as untimely.[6]

### C.    Merits of the Petition

#### 1. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") allows a federal court to grant habeas relief to a state prisoner only if a state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[6] Although not specifically addressed by Petitioner, the Court also finds that Petitioner has failed to make a gateway showing of actual innocence that would entitle him to avoid the statute of limitations requirement.  The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to avoid the "expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  To set forth a credible claim of actual innocence, the petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also House v. Bell*, 547 U.S. 518, 537 (2006).  The petitioner must further demonstrate that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 538 (quotation omitted).

Here, not only has Petitioner abandoned any claim of innocence, he continues to claim the immunity from prosecution for crimes against the victims he identified pursuant to the plea agreement.  *See Bousley v. United States*, 523 U.S. 614, 624 (1998) (holding that, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges").  Based on the record before the Court, it is clear that Petitioner is unable to make any claim of actual innocence, both for his crimes of conviction and for those crimes to which he received immunity as part of his plea agreement.

proceeding." 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 409-10 (2000). A decision "involves an unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08. A petitioner must therefore demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is a "'highly deferential standard,'" requiring that state courts "'be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted). However, "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

Where a state court denies a claim on the merits without explaining its reasons, a petitioner still bears the burden to show "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. In those cases, "a habeas court must determine what arguments or theories ... could have supported[ ] the state court's decision," and then accord deference if "it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102; *see also Shinn v. Kayer*, 592 US. ___, 141 S. Ct. 517, 524 (2020) ("[W]e must determine what arguments or theories ... could have supported the state court's determination.... Then, we must assess whether fairminded jurists could disagree on the correctness of the state court's decision if based on one of those arguments or theories") (internal quotation marks omitted).

Here, because the state court reviewed the merits of Petitioner's claims, AEDPA deference is applicable. Therefore, Petitioner must demonstrate that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.

### 2. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must make two showings. First, he must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must establish that he suffered prejudice — in this context, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is settled that "'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quotation omitted). When a petitioner seeks relief on the basis of ineffective assistance of counsel with respect to a guilty plea, the prejudice prong requires demonstrating "'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Premo v. Moore*, 562 U.S. 115, 129 (2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *see also Lafler*, 566 U.S. at 163 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice") (citation omitted). A petitioner who has pled guilty "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citation omitted). "This inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to plea[d]." *Matos v. United States*, 907 F. Supp. 2d 378, 382 (S.D.N.Y.

2012) (citations omitted); *accord Cocheekaran v. Heath*, No. 12 Civ. 4140, 2013 WL 1846738, *7 (S.D.N.Y. May 2, 2013).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' ... and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citation and quotation omitted).  A petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance ...  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

### a. Good Time Credit

In his application, Petitioner claims that his plea counsel was ineffective in that they incorrectly advised him about the amount of time he would actually spend in prison if he accepted the plea.  Petitioner asserts that, prior to accepting the plea offer, he inquired into the possibility of time off for good behavior; that his attorneys either told him, or caused another person to tell him, that he might serve as little as eighteen (18) years of imprisonment; that this advice was inaccurate; and that, but for this erroneous advice, he would have rejected the plea offer and proceeded to trial.  *See* Dkt. No. 1-1 at 12-17.  Specifically, Petitioner claims that, despite plea counsels' promises to the contrary, he is actually required to serve a total of twenty-seven years and four months before he is eligible for parole release.  *See id.* at 9.

Here, Petitioner's claim is based almost exclusively on his claim that plea counsel informed him that, with good time credit, he would be eligible for release after serving eighteen years of his sentence.  In denying this claim on direct appeal, the Third Department held that Petitioner's ineffective assistance claim is "contradicted by the plea allocution, during which he assured County Court that he had ample time to discuss the matter with the various attorneys that represented him, that he was satisfied with the services of his counsel and that, other than what

had been put on the record as part of the agreement, no other promises had been made to him as to what sentence he would receive." *Trimm*, 129 A.D.3d at 1216.  The court continued by noting that "counsel was able to secure a very favorable plea agreement in light of the number and severity of the crimes charged, and 'nothing in the record at the time of the plea calls into question the voluntariness of [the] plea or indicates that it was rendered so due to counsel's representation.'" *Id.* at 1216-17 (quotation and other citations omitted).

In denying Petitioner's CPL § 440.10 motion, the County Court first found that Petitioner's "self-serving and conclusory affidavit is directly contradicted by the record evidence, including his unequivocal affirmations to the Court during his plea allocution that he understood the terms of the agreement placed on the record, he had no questions about the agreement, he was voluntarily and of his own free choice pleading to the charges, and that he was satisfied with the representation he received from all of his attorneys." Dkt. No. 11-2 at 428.  Further, the court noted that Petitioner's counsel negotiated "an extremely advantageous plea bargain and "nothing in the record at the time of the plea calls into question the voluntariness of the plea or indicates that it was rendered so due to counsel's representation.'" *Id.* at 429 (quoting *People v. Herringshaw*, 83 A.D.3d 1133, 1134 (3d Dep't 2011)).

As an initial matter, this Court cannot find that the state courts unreasonably applied clearly-established federal law because there is no clearly-established federal law to apply here. Petitioner claims that he was persuaded to accept a plea offer to an aggregate term of thirty-two years of imprisonment because counsel incorrectly advised him that he would only serve eighteen years of that sentence if he qualified for good time credit and participated in various prison programs.  *See* Dkt. No. 1-1 at 9-11.  Time off for good behavior is a matter solely within the discretion of the Department of Corrections and Community Supervision.  *See* N.Y. Corr. Law §

803(4).  The Supreme Court has expressly reserved on the question of whether counsel's

erroneous advise regarding the possibility of discretionary early release can ever be

constitutionally ineffective assistance of counsel.  *See Hill*, 474 U.S. at 60 ("We find it

unnecessary to determine whether there may be circumstances under which erroneous advice by

counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel,

because in the present case we conclude that petitioner's allegations are insufficient to satisfy the

*Strickland v. Washington* requirement of 'prejudice'").  Where, as here, the Supreme Court has

expressly reserved on a question, federal law is, by definition, not "clearly established" for

purposes of the AEDPA.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) (holding that "clearly

established federal law" is limited to "the holdings, as opposed to the dicta, of this Court's

decisions").  Courts have routinely reached this conclusion when faced with facts similar to the

present matter.  *See Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) (reversing the district

court's decision granting a petition for a writ of habeas corpus and holding that the Supreme Court

has never held that counsel is constitutionally deficient when he or she fails to inform a defendant

considering a guilty plea that he or she will not be eligible for parole); *Guzman v. Lamarque*, 378

Fed. Appx. 762, 763 (9th Cir. 2010) (holding that a defendant receiving incorrect information

regarding his parole eligibility "did not violate law clearly established by the United State

Supreme Court") (citing *Lambert v. Blodgett*, 393 F.3d 943, 981 n.26 (9th Cir. 2004)); *Plumaj v.

Booker*, 33 F. Supp. 3d 897, 911 (E.D. Mich. 2014) (holding that there "was no clearly established

Supreme Court case law that held that mis-advice about parole consequences amounted to

deficient performance under *Strickland*"), *aff'd*, 629 Fed. Appx. 662 (6th Cir. 2015); *Brown v.

Perini*, 718 F.2d 784, 788-89 (6th Cir. 1983); *Fields v. Hetzel*, No. 2:12-cv-2912, 2015 WL

5608191, *4 (N.D. Ala. Sept. 1, 2015) (denying the petitioner's ineffective assistance of counsel

20

claim where the petitioner's attorney allegedly informed him that he would become eligible for parole if he pled guilty after serving three-to-seven years of his sentence when, in fact, he would not become eligible for parole for at least fifteen years because the law was not clearly established that mis-advice as to parole eligibility constitutes constitutionally deficient assistance of counsel).[7]

Here, the state courts' refusal to grant relief on this claim cannot be said to be contrary to, or an unreasonable application of, clearly established Federal law.  Accordingly, the Court denies the petition on this alternative ground.

In any event, there is no indication that Petitioner pled guilty on the basis of inaccurate advice regarding his eligibility for merit time allowance.  Petitioner's otherwise self-serving affidavit claims that, upon hearing that he might serve as little as eighteen years of imprisonment, he "told [his] attorneys that [he] did not want to accept this offer" and he did not accept it until after his lawyers warned him that "this was the best deal possible."  Dkt. No. 11-2 at 66-68.  Although Petitioner's affidavit claims that he believe that he "would only serve eighteen (18) years in state prison," *see id.* at 68, he testified at the plea allocution that he knew he had negotiated a sentence of thirty-two years and that neither his attorneys, nor anyone else, had promised that he would serve any less.  *See id.* at 45-47.  Moreover, Mr. Blanch and Mr. Parkman swore under oath that they made no such representation to him in the course of plea negotiations, and that their only

---

[7] The Court notes that Petitioner relies on *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979), for the proposition that the misinformation he received regarding his parole eligibility rendered his plea unknowingly, involuntarily and unintelligently made.  *See* Dkt. No. 1-1 at 12. *Strader*, however, was decided before the effective date of the AEDPA and the deferential standard set forth in 28 U.S.C. § 2254(d).  *See Keener v. Bazzle*, 481 F. Supp. 3d 521, 529 (D.S.C. 2007).  Moreover, as noted above, the Fourth Circuit reached the opposite conclusion in a more recent decision, that was decided after the AEDPA became effective.  *See Bustos*, 521 F.3d at 325-26.

discussion of the "good time credit that was *potentially* available to him" occurred "*only after* he had agreed to accept the plea deal[.]" *Id.* at 92-94, 441-42 (emphasis in original).  Given that timeline, it is impossible for Petitioner to carry his burden of "show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Nor is it plausible that Petitioner would have gone to trial had he known that he would serve at least 27 1/3 years of imprisonment.  First, as plea counsel emphasized to Petitioner, there was no guarantee that he would receive any merit time allowance since such allowances are purely discretionary and contingent on fulfilling prison requirements.  *See* Dkt. No. 11-2 at 93-94.  Mr. Parkman affirmed under oath that he expressly told Petitioner that he could not speak with confidence about the maximum good-behavior credit available, and that he would need to conduct additional research on the matter to know for sure.  *See id.*  Given that trial lay well in the future – Petitioner entered his plea at a court date originally scheduled for a suppression hearing – Petitioner would surely have waited for that research to be completed if the maximum good-behavior credit was important to his decision.

Additionally, Petitioner received an incredibly favorable plea deal.  He had been indicted on murder and sexual-abuse offenses, including the rape of a nine-year-old boy, and counsel had been informed that District Attorney Nicole Duve "was prepared to present several separate and additional Predatory Rape counts against [Petitioner]."  Dkt. No. 11-2 at 91, 439.  At trial, Petitioner's jury would have heard evidence that he buried his murder victim and hid his death for nearly two years, and that he used pills and alcohol to lure elementary-school-aged boys for sexual exploitation.  Petitioner specifically asked counsel to seek a plea deal to cover all charges against him, and they negotiated a bargain in which he not only received leniency on the charged

homicide and sex crimes, but also won a guarantee of immunity for his many other sex crimes against a number of children.[8]  Petitioner's four privately-retained attorneys (Ryan Blanch, Esq., James Parkman, Esq., William White, Esq., and Richard Manning, Esq.) unanimously agreed that the plea offer was extremely favorable in light of the circumstances and the best that he could expect to receive.  *See id.* at 90-91.  In his application, Petitioner does not dispute this evaluation or suggest that he had any hope of acquittal on the charges he faced.  Given his avowed interest in a plea deal and the very favorable deal he was offered, the notion that Petitioner would have rejected the deal if he had known about the cap on merit time allowance is simply implausible.

As Respondent correctly notes, the state court found that Petitioner's decision to accept such a favorable plea bargain did not turn on any tentative representations regarding merit time allowance, which is a factual determination that controls absent clear and compelling evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1).  Petitioner's self-serving and conclusory affidavit falls far short of meeting this standard.  As such, the Court also finds that Petitioner has failed to demonstrate that the state court unreasonably applied clearly-established federal law in rejecting his claim.

### b. Additional Alleged Miscommunications

In addition to the alleged misstatements discussed above, Petitioner presents several other allegations regarding miscommunications between himself and plea counsel.  *See* Dkt. No. 1-1 at 12-14.  These additional allegations require little discussion.

First, Petitioner claims that "he was advised by his attorneys that he would only serve twenty (20) years of post-release supervision, but the real sentence was for two periods of post-

---

[8] If convicted at trial on the murder charge, Petitioner would have faced a mandatory term of life imprisonment.  *See* N.Y. Penal Law § 70.00(3)(a)(i).

release supervision, one for five (5) years and one for twenty (20) years.  Although the terms of supervised release run concurrently as a matter of law (PL § 70.45(5)(c)), this is another example of [Petitioner] not fully understanding and appreciating the true terms of his plea deal prior to entering his plea." *Id.* at 12.  As Petitioner acknowledges, pursuant to New York law, Petitioner's two terms of supervised release of five and twenty years run concurrently to each other.  *See* N.Y. Penal Law § 70.45(5)(c).  Thus, to the extent that his attorneys told him he "would only serve twenty (20) years of post-release supervision," that advice was accurate and not misleading.  In any event, Petitioner does not allege that he would not have pled guilty had he known that he would be required to serve concurrent terms of supervised release for twenty years instead of a single term of supervised release of twenty years.  As such, to the extent that an incredibly strained reading of this statement from his attorneys could be seen as misleading, he has failed to demonstrate that he suffered any prejudice.

Next, Petitioner claims that his plea counsel told him that his letter to Mr. Wing's mother, which he wrote as a condition of the plea agreement, "would be destroyed immediately upon reading." Dkt. No. 1-1 at 13.  Specifically, among his obligations under the plea agreement, Petitioner agreed to give Mr. Wing's mother an explanation of why and how he killed her son. *See* Dkt. No. 11-2 at 43.  Petitioner prepared a written account of his crime, which was filed with the court at the time he entered his plea.  *See id.*  Petitioner does not suggest that he requested that this confession be destroyed, and as he acknowledges, he knew that the confession had been filed with the court prior to entering his plea.  *See id.*  District Attorney Duve specifically stated on the record that the letter had been shared with Mr. Wing's mother and that his counsel had the letter "in writing in this envelope, which I'm prepared to file with the Court."  *Id.*  At no point did Petitioner object to the fact that the letter was being filed with the court.  As Respondent correctly

24

notes, Petitioner does not, and cannot, allege that plea counsel's alleged misstatement to him about the confession affected his decision to plead guilty and, therefore, he has failed to demonstrate prejudice.

Next, Petitioner claims that he was advised by plea counsel that he would not have to waive his right to appeal and that the issues of restitution were not properly explained to him prior to entering his plea. *See* Dkt. No. 1-1 at 13. Again, however, this condition was read into the record at the time of Petitioner's plea, Petitioner expressed no surprise that he would be required to waive his right to appeal, counsel attested that the waiver was part of the agreement, the trial court advised Petitioner that the waiver of appeal was distinct from the guilty plea, and Petitioner executed separate written appellate waivers without complaint. *See* Dkt. No. 11-2 at 40-43, 48-49. Petitioner does not allege that he would not have pled guilty had he known that he was waiving his right to appeal and, in any event, the Third Department reviewed Petitioner's appellate claims on direct review notwithstanding the waivers. As such, the Court finds that Petitioner's allegations regarding the appellate waivers are without merit and do not otherwise establish prejudice.

As to Petitioner's claim regarding plea counsel's failure to "properly explain[ ]" his restitution obligations prior to the plea, *see* Dkt. No. 1-1 at 13, his conclusory assertion is insufficient to demonstrate ineffective assistance of counsel. Petitioner does not explain what was improperly explained, and plea counsel specifically placed on the record precisely what restitution would entail: Petitioner would be obligated to provide restitution in an amount to be determined during the presentence investigation, but that no restitution would be ordered for any of the victims of the uncharged crimes for which Petitioner was receiving immunity. *See* Dkt. No. 11-2 at 42-43. Although there was some confusion at the sentencing hearing regarding who would be

entitled to restitution, the court eventually made clear that only the victims named in the indictments to which Petitioner pled guilty would be entitled to restitution. *See id.* at 135-36. Nothing in the record before the Court demonstrates that Petitioner received constitutionally ineffective assistance of counsel regarding his restitution obligations.

### c. Intoxication

Finally, Petitioner claims that he consumed cocaine and suboxone both prior to plea negotiations and at the time of the plea itself, and that these substances impaired him to the extent that his plea was involuntary. *See* Dkt. No. 1-1 at 13-14. In his affidavit submitted to withdraw his guilty pleas, Petitioner claimed that when he takes these substances he is put in a mental condition where he "zones out" and he feels like he is "number" and in a "different place" both "mentally and physically." Dkt. No. 11-2 at 60. Petitioner claims that his consumption of these substances affected his ability to understand the nature of the April 26, 2013 plea and rendered his plea unintelligent and involuntary. *See id.*

Contrary to Petitioner's assertions, the state courts properly rejected this claim, which is based solely on his self-serving statement that he was under the influence of cocaine and suboxone at the time of his plea. Petitioner has presented no evidence to support his contention. To the contrary, he unequivocally testified at the plea allocution that he was pleading voluntarily, of his own free will, and he specifically denied consuming any intoxicating substances within the twenty-four hours prior to his plea. *See Rahman v. Graham*, No. 16-cv-5318, 2018 WL 9339953, *12 (S.D.N.Y. Sept. 14, 2018) (citation omitted); *see also Reed v. Brown*, No. 10 Civ. 3072, 2012 WL 34092, *7 (rejecting the petitioner's claim that his plea was involuntary and unknowing where the petitioner affirmed at the plea allocution that he was not under the influence and the record contained no evidence supporting his claim of intoxication). In rejecting his claim, the trial court

noted that it had observed his demeanor at the change of plea and his attorneys submitted an affidavit that they saw no indication that he was intoxicated. *See* Dkt. No. 11-2 at 90. Based on the facts before it, the trial court properly denied this claim and it provides no basis for habeas relief. *See Rahman*, 2018 WL 9889953, at *12; *see also Alexander v. Senkowski*, 126 Fed. Appx. 7, 12 (2d Cir. 2005) (holding that the state court's evaluation of credibility based on testimony and observation of the petitioner during proceedings was not an unreasonable determination of the facts).

Accordingly, the Court rejects Petitioner's claim that his plea was unknowing and involuntary based on his alleged intoxication.

### 3. Due Process Claim

Petitioner also alleges that he was denied his right to due process as guaranteed by the Fifth and Fourteenth Amendments when the trial court failed to afford him "a reasonable opportunity to present his contentions as to his Motion to Withdraw his plea." Dkt. No. 1-1 at 14. Specifically, Petitioner claims that the trial court erred in denying his motion without conducting an evidentiary hearing. *See id.* at 14-19. In response, Respondent argues that Petitioner has defaulted this claim and that it is otherwise not cognizable and meritless. *See* Dkt. No. 11-1 at 25-27.

#### a. Procedural Default

Respondent contends that Petitioner failed to properly present his federal due process claim in his state court applications and, therefore, he has defaulted this claim. *See* Dkt. No. 11-1 at 25-26. The Court agrees.

Before the court may consider a claim in a habeas petition, it must be determined whether the petitioner has exhausted all of his state remedies as to that claim. *See Cornell v. Kirkpatrick*,

665 F.3d 369, 375 (2d Cir. 2011). "'Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Id.* (quotation omitted). To fairly present a federal claim, the petitioner is required to raise that claim before the state courts in a manner that is "'likely to alert the [state] court[s] to the claim's federal nature.'" *Id.* at 375-76 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)).

In the present matter, in his direct appeal, Petitioner argued that the trial court denied his rights by summarily denying his motion to withdraw his guilty plea. *See* Dkt. No. 11-2 at 28-32. Petitioner relied solely on C.P.L. § 230.60, two decisions from the New York Court of Appeals, and one decision from the Appellate Division in arguing that the trial court erred in denying him an evidentiary hearing. *See id.* at 28-29 (citing *People v. McKennion*, 27 N.Y.2d 671 (1970); *People v. Tinsley*, 35 N.Y.2d 926, 927 (1974); *People v. Davis*, 672 N.Y.S.2d 945 (3d Dep't 1998)). None of the cases upon which Petitioner relied address federal due process protections. Rather, these decisions rely solely on state law. Moreover, not once in Petitioner's appellate brief does he even mention the words "due process" when arguing that the trial court erred in summarily denying his motion to withdraw his plea. *See* Dkt. No. 11-2 at 28-32. On these facts, it is clear that Petitioner failed to adequately "'alert the [state] court[s] to the claim's federal nature.'" *Cornell*, 665 F.3d at 375-76 (quotation omitted).[9]

Accordingly, the Court finds that Petitioner has procedurally defaulted his due process claim.

### b. Merits

---

[9] In rejecting Petitioner's claim on direct appeal, the Third Department relied exclusively on state law. *See Trimm*, 129 A.D.3d at 1215-16.

The Second Circuit has held that "'[a] defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea.'" *Rahman*, 2018 WL 9339953, at *15 (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992)).  "In order to obtain a hearing, a defendant 'must present some significant questions concerning the voluntariness or general validity of the plea.'" *Id.* (quoting *Gonzalez*, 970 F.2d at 1100).  "It is not enough if the allegations 'merely contradict the record, are inherently incredible, or are simply conclusory.'"  *Id.* (quoting *Gonzalez*, 970 F.2d at 1100).

In *Hines v. Miller*, 318 F.3d 157 (2d Cir. 2003), the petitioner pled guilty in state court and thereafter sought to withdraw his plea, claiming that his attorney coerced him into accepting the plea and that he was innocent of the crime.  *See id.* at 159.  The petitioner's counsel asked to be relieved and for new counsel to be appointed to represent the petitioner on the motion.  *See id.* The trial court, however, denied the motion without holding a hearing and without appointing new counsel, noting that the petitioner had inculpated himself when he entered the plea and stated during the plea allocution that no one had forced him to plead guilty.  *See id.*

In seeking federal habeas review of his conviction, the petitioner argued that the failure to hold a hearing on his motion to withdraw his plea violated due process.  *See id.* at 161.  The Second Circuit, however, held that "a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea."  *Id.* at 162; *accord Cosey v. Walsh*, No. 02 Civ. 6251, 2003 WL 1824640, *3 (S.D.N.Y. Apr. 8, 2003); *Thomas v. Senkowski*, 968 F. Supp. 953, 956 (S.D.N.Y. 1997).  Thus, "the failure to hold an evidentiary hearing ... does not offend a deeply rooted or 'fundamental' principle of justice."  *Hines*, 318 F.3d at 162 (quoting *Medina v. California*, 505 U.S. 437, 445, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992)).

In light of the lack of a federal constitutional right to an evidentiary hearing in this situation, the Appellate Division's decision upholding the failure to hold such a hearing was not "contrary to, or involved an unreasonable application of, clearly established Federal law." Accordingly, the Court finds that Petitioner's due process claim must be denied on the merits. *See Viscomi v. Conway*, 438 F. Supp. 2d 163, 175-76 (W.D.N.Y. 2006); *Rowe v. Miller*, 299 F. Supp. 3d 231, 240-41 (S.D.N.Y. 2004).

Finally, to the extent that Petitioner is arguing that the state court violated state law in denying him an evidentiary hearing, the claim is not cognizable on federal habeas review.  It is well settled that "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, the Court denies the petition in its entirety.

### D.    Certificate of Appealability

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[10] 28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2553(c)(2).

---

[10] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 16, 2021
       Albany, New York

Mae A. D'Agostino
U.S. District Judge